# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| KENNETH CHAPMAN, | : |
|     Plaintiff, | : |
| vs. | :     CA 11-0097-CG-C |
| WRIGHT TRANSPORTATION, | : |
|     Defendant. | : |

## **REPORT AND RECOMMENDATION**

This cause is before the Court for entry of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), on the legal viability of the *pro se* plaintiff's claims asserted against the named defendant. On May 19, 2011, a status hearing was conducted in this action and two actions currently pending before Chief United States District Judge William H. Steele—*Chapman v. Western Express, Inc.*, 10-0675-WS-C, and *Chapman v. Southern Refrigeration Transportation*, 11-0180-WS-C[1]—for the purpose of determining the factual underpinnings for plaintiff's claims asserted against the defendants and to determine whether plaintiff desired to continue to pursue his

---

[1] In addition to the presence of Mr. Chapman at the hearing, defendant Western Express, Inc. was represented by Kristin Ashworth, Esquire, and Mr. Wright was present on behalf of Wright Transportation. At the time of the hearing, the undersigned had not ruled upon plaintiff's motion to proceed without prepayment of costs and fees with respect to Southern Refrigeration Transportation. Although the undersigned granted plaintiff's IFP motion in this last case during the course of the hearing, there is no need to serve Southern Refrigeration with process given the contents of the report and recommendation entered currently herewith in the two cases pending before Chief Judge Steele.

lawsuits. Upon a consideration of the information supplied during the hearing, as well as all pertinent materials contained in each of Mr. Chapman's cases, it is determined both that plaintiff has voluntarily agreed to dismiss all claims asserted against the above-named defendant and, also, to the extent that Mr. Chapman may have felt undue pressure to dismiss his claims, all claims asserted by plaintiff against Wright Transportation are due to be dismissed because plaintiff has failed to either timely exhaust administrative remedies or state a claim upon which relief may be granted.

## **FINDINGS OF FACT**

1.  Chapman was hired by Wright Transportation on June 24, 2010, and he was terminated on July 27, 2010 (Doc. 1, Charge of Discrimination), after a can of beer was found in the cab of his truck by another driver (*compare* Doc. 1, *with* Doc. 18, Attachments).

2.  Chapman worked for Wright as an over-the-road trucker. He shared his truck with two other drivers who drove the truck in furtherance of the company's city operations ("city drivers"). (*Compare Docs.* 1 & 13, *with* Doc. 18, Attachments.) The can of beer was found under the driver's seat of the truck by one of the city drivers, Julio Russo; Russo showed the can of beer to another driver, Donald Smiler, before he entered the truck. (*See* Doc. 18, Attachments.) At the time the beer was discovered, plaintiff was on "home time" and not in control of the truck. (*Compare* Docs. 1 & 13, *with* Doc. 18, Attachments.) While plaintiff contends there was discriminatory intent on the part of defendant in firing him (*see* Doc. 13), he admitted during the hearing on May

19, 2011—consistent with his admission during his worker's compensation hearing (*see* Doc. 18, Decision on Unemployment Compensation Claim, at 1 ("The owner confronted the claimant who admitted the beer was his. . . . The preponderance of the evidence shows that the claimant was discharged for violation of company policy when he was found to have alcohol in his truck. Evidence shows that the claimant was aware of the policy and admitted to the violation."))[2]—that the can of beer could have fallen out of his suitcase.

3. On February 18, 2011, plaintiff filed a charge of discrimination against Wright Transportation with the Equal Employment Opportunity Commission (the "EEOC"). (Doc. 1, Charge of Discrimination.) He alleged he was subjected to discrimination on account of his race from July 27, 2010 through November 23, 2010 in violation of Title VII of the Civil Rights Act of 1964. (*Id.*)

> I am Black and was hired by the Respondent on June 24, 2010 as a Truck Driver. My employment was terminated on July 27, 2010. The reason Pat Wright (White Owner) gave for the termination was because a can of beer was found in my truck. This information was reported to the Department of Transportation (DOT). On November 27, 2010, I was denied employment at another transportation company as a result of the above information provided by the Respondent to the DOT. I believe I was fired because of my race.

---

[2] Plaintiff's worker's compensation hearing was conducted on November 23, 2010; the unfavorable decision was mailed to Chapman the following day. (*See id.*)

(*Id.*)[3]

4. Plaintiff filed suit in this Court on February 22, 2011, alleging both discrimination in employment and a violation of the "Privacy Act."[4] (Doc. 1.)[5] According to plaintiff, Pat Wright violated his privacy by informing a potential/prospective employer, Paschall Truck Lines, that he was guilty of an alcohol violation. (*See id.*) Chapman has since attempted to "refine" his "Privacy Act" claim to assert a retaliation claim against Wright. (*Compare id.*, *with e.g.*, Doc. 13 ("In October of last year I was forced to apply for my unemployment compensation. Wright Transportation was my last place of bona fide employment[] so . . . [on] or about Nov. 23, 2010 Mr. . Wright and myself had a[n] over the phone employment hearing. When I stated my defense . . . [that] no beer was found in me or on me and that I was on home time when the [alleged] can of beer was found [and] the truck was not in my care[,] . . .

---

[3] On January 10, 2011, the EEOC notified plaintiff that it was dismissing his charge of discrimination. (Doc. 1, Dismissal and Notice of Rights.) This correspondence also advised plaintiff of his "right to sue." (*Id.*)

[4] As an initial matter, to the extent plaintiff maintains that he has asserted a Privacy Act claim against Wright, this claim fails because Wright Transportation is a private corporation, and the Privacy Act only applies to government agencies. *Williams v. ALFA Ins. Agency*, 349 Fed. App'x 375, 376 (11th Cir. 2009) (per curiam); *cf. Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1381 (11th Cir. 2010) ("The Privacy Act imposed upon **federal agencies** an array of record-keeping obligations to prevent unauthorized disclosures of confidential information.") (emphasis supplied).

[5] Plaintiff sought, and was granted, leave to proceed *in forma pauperis*. (*See* Docs. 4 & 5.)

4

Mr. Wright became furious with me and . . . out of retaliation and to cause me personal harm[,] reported the incident to the Department of Transportation in the public domain [on] Nov. 27, 2010[.] . . . [This is something] prospective employers would view as material to hiring decisions. Now its [sic] dissemination of a negative employment reference that [affects] me in securing a permanent job [and] also [affects] my future employment prospects. The facts will indicate discriminatory intent.")). In addition, plaintiff has sought leave of the Court to add Paschall Truck Lines as a defendant claiming that Paschall conspired with Wright to not hire him. (*See* Doc. 14.)[6]

5. As alluded to earlier, plaintiff later acknowledged during the hearing on May 19, 2011 that race was not a factor in his termination by Wright Transportation, and he accepts that the termination was actually due to the can of beer being found in his truck.

## **CONCLUSIONS OF LAW**

1. Kenneth Chapman is a *pro se* litigant. As such, his "pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States,* 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam). Even though courts are given leave to liberally construe pleadings of *pro*

---

[6] Plaintiff's various motions to amend his complaint (Docs. 13-15) have not been addressed by the Court (*see* Docket Sheet). Based on the contents of this report and recommendation, his motions to amend are now **MOOT**, as is his motion to remove personal work records from the public domain (Doc. 22). Finally, Wright's motion to dismiss (Doc. 18) is **MOOT** as is plaintiff's July 26, 2011 motion to allow him to submit document (Doc. 29).

*se* litigants in recognition of their lack of formal legal education, "this leniency does not give a court license to serve as *de facto* counsel for a party[.]" *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Ashcroft v. Iqbal*, ___ U.S. ____, ____, 129 S. Ct. 1937, 1950 (2009) (citation omitted). In addition, courts are not required to "rewrite an otherwise deficient pleading in order to sustain an action[.]" *Id.* (citation omitted).

2. 28 U.S.C. §§ 1915(e)(2)(B)(i) & (ii) provide that "the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . is frivolous or malicious [or] fails to state a claim on which relief may be granted[.]" "A complaint is frivolous if it is without arguable merit either in law or in fact." *Williams v. St. Vincent Hosp.*, 258 Fed. App'x 293, 294 (11th Cir. 2007) (per curiam) (citing *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001)). The court in *Williams* went on to state that § 1915 "accords judges not only the authority to dismiss a claim based on [an] indisputably meritless legal theory, but also the ***unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless***." *Id.* (quoting *Bilal*, 251 F.3d at 1349) (emphasis added).

3. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint on the basis that the plaintiff has failed to state a claim upon which relief may be granted. Such a motion questions the legal sufficiency of a complaint (or portions of a complaint); therefore, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth

6

in the complaint are true. *See, e.g., United States v. Gaubert*, 499 U.S. 315, 327 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990). All factual allegations, moreover, are to be construed in the light most favorable to the plaintiff. *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598 (1989).

4. Rule 8(a)(2) generally sets the benchmark for determining whether a complaint's allegations are sufficient to survive a Rule 12(b)(6) motion. *See Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) ("Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' As the Court held in *Twombly*, . . . the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."). Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops

7

> short of the line between possibility and plausibility of entitlement to relief.
>
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief.

*Id*. at __, 129 S. Ct. at 1949-1950 (internal citations and quotation marks omitted); *see also id*. at __, 129 S. Ct. at 1950-1951 (a plaintiff must nudge his claims "across the line from conceivable to plausible."); *see Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1381 (11th Cir. 2010) ("[G]iven the pleading standards announced in *Twombly* and *Iqbal*, [plaintiff] must do more than recite [] statutory elements in conclusory fashion. Rather, his allegations must proffer enough factual content to 'raise a right to relief above the speculative level.'").

5. Moreover, it is clear that a plaintiff may not sue under Title VII unless he first exhausts administrative remedies by filing a timely charge of discrimination with the appropriate agency, in this case the EEOC. *See, e.g., Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). "In a non-deferral state such as Alabama, the deadline for filing is 180 days after the alleged discriminatory act." *Carter v. University of South*

*Alabama Children's & Women's Hosp.*, 510 F.Supp.2d 596, 606 (S.D. Ala. 2007). Accordingly, "[i]f the victim of an employer's unlawful employment practice does not file a timely complaint, the unlawful practice ceases to have legal significance, and the employer is entitled to treat the unlawful practice as if it were lawful." *City of Hialeah, Fla. v. Rojas*, 311 F.3d 1096, 1102 (11th Cir. 2002) (citation omitted).

6. In this particular case, it is clear that Chapman was terminated by Wright on July 27, 2010, and that he filed his EEOC Charge of Discrimination some two hundred and six (206) days later, on February 18, 2011. Inasmuch as clear precedent in this circuit required Chapman to file his charge of discrimination with the EEOC not later than 180 days after his allegedly discriminatory termination, his failure to do so makes his EEOC Charge untimely with respect to his Title VII discriminatory termination claim. Therefore, this claim is properly **DISMISSED** for failure to exhaust administrative remedies.

7. Even if this Court considers the arguable "merits" of plaintiff discriminatory termination claim, he fares no better. "A plaintiff may establish a *prima facie* case of discriminatory termination under Title VII by showing that: he (1) was a member of a protected class; (2) was qualified for the job; (3) suffered an adverse employment action; and (4) was replaced by someone outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class." *Jiann Min Chang v. Alabama Agric. & Mech. Univ.*, 355 Fed. App'x 250, 251 (11th Cir. 2009) (per curiam) (citation and internal quotation marks omitted).

8. The undersigned notes that neither in the written documents submitted in this case, nor during the May 19, 2011 Hearing, did Chapman allege that he was replaced by a person outside his protected class or that he was treated less favorably than a similarly-situated individual outside his protected class. Therefore, plaintiff has not even alleged a *prima facie* case of discriminatory termination.[7]

9. To establish a claim *prima facie* case of retaliation, a plaintiff "must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was some causal relationship between the two events." *Laosebikan v. Coca-Cola Co.*, 167 Fed. App'x 758, 764 (11th Cir. 2006) (per curiam); *see also Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002) ("It is well established in this circuit that to successfully allege a prima facie retaliation claim under Title VII . . ., a plaintiff must show that (1) []he engaged in statutorily protected expression; (2) []he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression.").

---

[7] Although Chapman's failure to state a *prima facie* case is, alone, grounds to dismiss his discriminatory termination claim, *see, e.g., Martinez v. National R.R. Passenger Corp.*, No. 10–55215, 2011 WL 2412578, at *1 (9th Cir. June 16, 2011) (mem.) ("Because Martinez failed to establish a *prima facie* case of discrimination on the basis of gender, the district court did not err in dismissing . . . his state wrongful termination claim."), his admission during the status hearing on May 19, 2011 that the reason he was terminated by Wright was not because of his race but because a can of beer was found in the cab of his truck signifies that—even if plaintiff could somehow satisfy his *prima facie* burden—he has no hope of establishing that the reason for his termination was a pretext for unlawful racial discrimination. Because there exists no discriminatory animus, plaintiff's Title VII discriminatory termination claim fails. *See Jiann Min Chang*, 355 Fed. App'x at 252.

> Protected expression involves opposing an employment practice made unlawful under Title VII or charging, testifying, assisting, or participating in a Title VII investigation, proceeding, or hearing. Statutorily protected expression includes complaining to superiors about harassment in the work place, lodging complaints with the EEOC and participating in [a] discrimination-based lawsuit. To establish the causal link requirement, the plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated. The plaintiff must at least establish that the employer was actually aware of the protected expression at the time it took adverse employment action against the plaintiff.

*Laosebikan,* 167 Fed. App'x at 763 (internal citations omitted).

10. The Eleventh Circuit has held that "[a] 'close temporal proximity' between the protected expression and an adverse action is sufficient circumstantial evidence of a causal connection for purposes of a prima facie case." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004); *cf. Anduze v. Florida Atlantic University*, 151 Fed. App'x 875, 877 (11th Cir. 2005) (per curiam) (affirming district court's finding that Anduze "did not establish a *prima facie* case of retaliation" because her EEOC charge was filed more than a month ***after*** her employment "considered Anduze to have abandoned her job"; "Thus, Anduze could not, as a matter of law, have engaged in protected activity under the Participation Clause at the time she was considered to have abandoned her position, because she had not yet filed a charge with the EEOC. Furthermore, Anduze could not satisfy the ***third prong*** of a *prima facie* retaliation case—showing a causal relation between the protected activity and adverse employment activity—***for these same reasons***.") (citation omitted and emphasis added), *cert. denied*, 547 U.S. 1193 (2006); *see also Hopkins v. Saint Lucie County Sch. Bd.*, 399 Fed. App'x 563, 566-67 (11th Cir. 2010)

(per curiam) (in case also involving a *pro se* litigant, the Eleventh Circuit affirmed the district court's dismissal of plaintiff's retaliation claim, noting that "[a]s for Hopkins' claim that the defendants retaliated against him by firing him, his complaint fails to state the first requirement of such a claim, because it does not allege sufficient facts to establish that he was engaged in a statutorily protected form of expression *when he was fired* in October 2007 . . . . [because his actions constituting protected expression occurred] months *after* the school district fired him") (citation omitted and some emphasis added); *Hawk v. Atlanta Peach Movers, Inc.*, Civil Action File No. 1:10–CV–0239–JFK, 2011 WL 1533024, at *8 (N.D. Ga. Apr. 21, 2011) (context of summary judgment) ("The first and third *prima facie* elements require Plaintiff to show that he engaged in statutorily protected speech and that this protected speech was causally related to his termination. Plaintiff Hawk is unable to establish these elements. Plaintiff Hawk contacted the EEOC and completed an intake questionnaire with an accompanying letter. He also submitted a charge of discrimination to the EEOC. However, all of Plaintiff's complaints to the EEOC occurred *after* Defendant had terminated his employment. Assuming that Plaintiff's complaints to the EEOC constitute protected expression, the court finds that no reasonable jury could conclude that he is able to show a causal connection between these complaints and his termination. At the time Defendant APM made the decision to fire him, Plaintiff had made no complaints of discrimination to the EEOC.") (internal citations omitted); *cf. Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59, 126 S.Ct. 2405, 2410, 165

L.Ed.2d 345 (2006) ("Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee (or job applicant) *because* he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'") (quoting 42 U.S.C. § 2000e-3(a)) (emphasis added).

11. Chapman has failed to establish that he engaged in any statutorily protected expression. This is because there is no evidence that Chapman ever opposed an employment action made unlawful under Title VII while employed by Wright, nor did he file his charge of discrimination with the EEOC until months after he was terminated.[8] *See Anduze*, 151 Fed. App'x at 877; *Hopkins*, 399 Fed App'x at 566-67; *Hawk*, 2011 WL 1533024, at *8. There is, moreover, an absence of a causal link, plaintiff having long been terminated before either participating in the worker's compensation hearing or filing his EEOC charge of discrimination. *See Anduze*, 151 Fed. App'x at 877; *Hawk*, 2011 WL 1533024, at *8. Thus, plaintiff's retaliation claim is due to be dismissed.

12. Finally, plaintiff also broadly alleges, in a document filed after his original complaint (Doc. 14), that Wright conspired with Paschall Truck Lines to not hire him.

> To state a claim under § 1985(3), a plaintiff must allege: (1) defendants engaged in a conspiracy; (2) the conspiracy's purpose was to directly or

---

[8] Instead, plaintiff's only allegation in support of a retaliation claim is that following his termination he participated in a worker's compensation hearing after which Wright Transportation reported the reason for his termination to the Department of Transportation. Again, this is not Title VII protected expression for a litany of reasons, not the least of which is the fact that the hearing occurred after his termination.

> indirectly deprive a protected person or class the equal protection of the laws, or equal privileges and immunities under the laws; (3) a conspirator committed an act to further the conspiracy; and (4) as a result, the plaintiff suffered injury to either his person or his property, or was deprived of a right or privilege of a citizen of the United States. When the alleged § 1985(3) conspirators are private actors, the plaintiff must demonstrate that the conspiracy was aimed at rights constitutionally protected against private impairment. These rights include only select "serious constitutional right[s]."
>
> The only rights the Supreme Court has expressly declared enforceable against private conspirators under § 1985(3) are the right to interstate travel and the right against involuntary servitude. Conversely, the Supreme Court has declared the freedom of speech, ***and the rights protected under Title VII***, insufficient to form the basis of § 1985(3) actions against private conspirators.

*Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010) (internal citations omitted) (emphasis added). Because a conspiracy to violate rights protected by Title VII cannot form the basis of a § 1985(3) conspiracy claim, *see id.*, the undersigned finds that Chapman has likewise failed to state a conspiracy claim against Wright Transportation (and Paschall).

## **CONCLUSION**

While plaintiff agreed to voluntarily dismiss his claims against Wright Transportation during the status hearing on May 19, 2011, consistent with Rule 41(a) of the Federal Rules of Civil Procedure, the undersigned does not rely upon Chapman's agreement in this regard as the sole basis for dismissing his claims against the defendant. Instead, the undersigned also specifically finds that plaintiff has not and

cannot assert a viable Title VII,[9] conspiracy, or Privacy Act claim against Wright Transportation; therefore, his complaint against Wright Transportation is due to be **DISMISSED WITH PREJUDICE**.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 10th day of August, 2011.

s/WILLIAM E. CASSADY<br>**UNITED STATES MAGISTRATE JUDGE**

---

[9]   In addition, as previously indicated, plaintiff's Title VII discriminatory termination charge is due to be dismissed with prejudice because Chapman failed to timely exhaust his administrative remedies.

# MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND <u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

l.  *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in S.D. Ala. L.R. 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[10] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.  *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[10]  Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" FED. R. CIV. P. 72(b)(2).